UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION

_____

NICKOLAS MELANTHIOU,

    Plaintiff,

v.

BOARD OF TRUSTEES,
LONG ISLAND UNIVERSITY
doing business as the ARNOLD
AND MARIE SCHWARTZ
COLLEGE OF PHARMACY,
DEAN PHYLLIS STONE,
DEAN ARASH DABESTANI,
DEAN JEAN-ANNE SMITH,
DEAN JOSEPH BOVA,
PRESIDENT KIMBERLY CLINE, and
JOHN & JANE DOES (1-10),

    Defendants.
_____

Civil Action No.: _____

**COMPLAINT AND
JURY DEMAND**

## **COMPLAINT**

Comes now, Plaintiff, Nickolas Melanthiou (hereinafter "Nickolas" or "Plaintiff"), by and through his undersigned attorney, and sues Defendants the Board of Trustees of Long Island University doing business as the Arnold and Marie Schwartz College of Pharmacy, Dean Phyllis Stone, Dean Dabestani, Dean Jean-Anne Smith, Dean Joseph Bova, and President Kimberly Cline, jointly and severally, and alternatively, and in support thereof, avers as follows:

**NATURE OF THE ACTION**

1.     This is a federal case brought under the Americans with Disabilities Act

("ADA"), codified at 42 U.S.C. § 12101, *et seq*. and Section 504 of the Rehabilitation Act of 1973 (the "Rehab Act").

2. Plaintiff Nickolas struggles with learning disabilities, namely ADHD and severe anxiety disorder.

3. After notifying LIU/the College of his learning disability and requesting an accommodation therefore, LIU/the College and the individual Defendants not only failed to grant the requested accommodation but conspired to dismiss Nickolas three (3) times and by burdening him with the unconscionable, arbitrary, and onerous condition of having to *retake seven classes he had already passed* as a condition for readmission.

4. In so doing, the Defendants herein violated both the ADA and Section 504 of the Rehab Act, causing the damages alleged herein.

## PARTIES

5. At all times relevant hereto, Plaintiff, Nickolas Melanthiou, is an adult resident citizen residing in Nassau County, New York.

6. At all times relevant hereto, Defendant the Board of Trustees of Long Island University (hereafter "LIU" or the "Board"), doing business as the Arnold and Marie Schwartz College of Pharmacy (hereafter "the College"), is a private postsecondary educational institution with the capacity to sue and be sued. Its offices are located in Nassau County, New York. Defendant, the Board of Trustees of Long Island University can be served with summons by serving its registered agent, Elizabeth Cheung Gaffney, Office of Legal Counsel, LIU Post, 720 Northern Blvd. Brookville NY 11548.

7. At all times relevant hereto, and upon information and belief, Defendant Dean Phyllis Stone (hereinafter "Dean Stone" or "Stone"), is an adult resident citizen of Chittenden

County, Vermont and can be served with summons at her usual place of employment at 85 South Prospect Street, 528C Waterman, Burlington, VT 05405. Dean Stone was at the time of the operative facts complained of herein the Assistant Dean of Student Academic Affairs at the College of Pharmacy.

8. At all times relevant hereto, and upon information and belief, Defendant Dean Arash Dabestani (hereinafter "Dean Dabestani" or "Dabestani"), is an adult resident citizen of Nassau County, New York, and can be served with summons at his usual place of employment at 75 Dekalb Ave., Brooklyn, NY 11201. Dean Dabestani was at the time of the operative facts complained of herein the Dean of the College of Pharmacy.

9. At all times relevant hereto, and upon information and belief, Defendant Dean Jean-Anne Smith (hereinafter "Dean Smith" or "Smith"), is an adult resident citizen of Nassau County, Vermont and can be served with summons at her usual place of employment at 720 Northern Blvd., Brookville, NY 11548. Dean Smith was at the time of the operative facts complained of herein the Assistant Dean of Students for Defendant, LIU.

10. At all times relevant hereto, and upon information and belief, Defendant President Joseph Bova, (hereinafter "Dean Bova" or "Bova"), is an adult resident citizen of Nassau County, New York, and can be served with summons at his usual place of employment at 75 Dekalb Ave., Room L 130 A, Brooklyn, NY 11201. Dean Bova was at the time of the operative facts complained of herein the Vice Dean of Academic Affairs at LIU Pharmacy.

11. At all times relevant hereto, and upon information and belief, Defendant, President Kimberly R. Cline (hereinafter "President Cline" or "Cline"), is an adult resident citizen of Nassau County, New York, and can be served with summons at his usual place of employment

3

at 720 Northern Blvd., Brookville, NY 11548. President Cline was at the time of the operative facts complained of herein the President of LIU.

## VENUE AND JURISDICTION

12. Venue is proper in the Eastern District of New York, pursuant to 28 U.S.C. §§ 1391(b)(1) & (b)(2), as, upon information and belief, all Defendants were residents of the State of New York, located within the Eastern District of New York at the time of the acts and occurrences complained of herein.

13. The Court has subject-matter jurisdiction over the Plaintiff's federal law claims, pursuant to 28 U.S.C. §§ 1331 (federal question).

14. This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so closely related to Plaintiff's federal claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

## GENERAL FACTUAL ALLEGATIONS

15. Nickolas suffers from ADHD (Attention-Deficit Hyperactivity Disorder), general anxiety disorder, and depression.

16. In the fall of 2017, he transferred from Hofstra University to Long Island University's Arnold & Marie Schwartz College of Pharmacy (Defendant) with twenty-two (22) credits and enrolled as a major in pharmacy.

17. As a requirement for admission to the College of Pharmacy, Nickolas successfully earned 16 credit hours in basic sciences during the summer of 2017, demonstrating his determination, motivation, confidence, and academic acuity.

18. During the fall semester of 2017, Nickolas failed his Biochemistry course.

19. During the Spring of 2018, Nickolas was advised by faculty to withdraw from all of his classes at the College of Pharmacy so as not to further jeopardize his academic career. Nickolas followed their advice.

20. In the Fall of 2018, he re-enrolled in the College of Pharmacy. During this time, Nickolas became unusually concerned about his health and developed a rash all over his body which he thought was an allergic reaction. Doctors at the emergency department of Brooklyn Hospital, however, diagnosed his rash as the result of unusually high stress levels and extreme anxiety.

21. During the Spring Semester of 2019, Nickolas failed two classes and was dismissed from the College. However, his professors advocated for him and he was reinstated in the Spring Semester of 2020, a month or so before the onset of the global Covid pandemic.

22. In March to April of 2020, Nickolas, his mother, and father contracted Covid and his father became very ill, having to spend nearly three months in intensive care in an induced coma and aspirated by a ventilator. The months of desperation and waiting, not knowing whether he would ever see his father alive again, wore Nickolas' already fragile being down to the core of his existence, but he nevertheless succeeded in passing all of his courses during that trying time.

23. During the Summer Semester of 2020, Nickolas was able to pass his internship program in spite of the fact that his father had been released from the hospital in a horribly deteriorated condition, which only added to the stress he labored under.

24. During the Fall Semester of 2020, Nickolas spent much of his time traveling back and forth from his Brooklyn Apartment to the family home in Manhasset to take care of his father, trying to spend as much time as possible with him.

25. The added emotional stress proved to be too much for Nickolas and he failed two more classes, which led to his second dismissal.

26. In the Spring of 2022, Nickolas was once again reinstated to the College.

27. During that semester, Nickolas' mother, Catherine, who is herself an alumna of the Schwartz College of Pharmacy, notified Dean Stone of Nickolas' disability by delivering a letter written by Nickolas' physician, Dr. Ethel Iusim, M.D., and requested that the College accommodate Nickolas' disability.

28. Instead of accommodating Nickolas' disability, Dean Stone not only refused to permit Nickolas to retake the two classes he had failed in the Fall of 2020, but unconscionably made his readmission contingent upon Nickolas retaking *all seven (7) classes he had already passed!*

29. This onerous condition was arbitrarily and unilaterally imposed by Dean Stone.

30. Subsequently, several faculty members of the College informed Nickolas and Dean Stone that they vehemently opposed such an unjustified and onerous condition.

31. Having been faced with this "take it or leave it" approach, Nickolas nevertheless accepted the terms, but the result was predictable.

32. As a direct result of the added stress this caused him to suffer, his former grades were replaced by lower passing grades, and Nickolas ended up failing two of the classes he had previously passed. All this resulted in his **third dismissal** from the College.

33. Meanwhile, Catherine began seeking the help of upper-echelon college administrators on Nickolas' behalf in hopes of moving the Defendants to withdraw this unjustified condition.

34. On September 6, 2022, Catherine again met with Dean Stone and presented her with a letter from Nickolas' physician, Dr. Ethel Iusim asking the College to provide Nickolas the academic support he needed. However, Dean Stone immediately rebuffed Catherine's attempt to have the condition removed.

35. Finding no relief from Dean Stone, Catherine began searching for the College's Office of Student Support Services, only to find out that the office had been closed at the campus and was moved to another location.

36. After a long and fruitless search, Catherine was pointed to Dean Jean-Anne Smith, the Associate Dean for Students at LIU whose office was located on LIU's Post campus.

37. In mid-October of 2022, Catherine met with Dean Jean Anne Smith and presented her with letters from Nickolas' physician, Dr. Ethel Iusim and Michael D. Fraser, PhD.

38. During the meeting, Catherine requested a simple accommodation for Nickolas. She requested that the College allow Nickolas to retain the credits he had already earned.

39. Dean Smith was initially very helpful and open to Catherine's plea for help and request for an accommodation, but she was shut down completely after speaking to Dean Stone.

40. Dean Smith sent a curt email, stating only "I'm sorry, we will not be taking him back", thus denying the requested accommodation.

41. In January 2023, Catherine began to contact, and eventually met with, Dean Joseph Bova, the Vice Dean of Academic Affairs at LIU Pharmacy. Like Dean Smith, Bova appeared at first very cordial and helpful, but then cut Nickolas off with a terse email dated February 1, 2023, stating "*After careful review of the information that we have for Nickolas, we will be unable to offer him readmittance to the College. I wish him the best in his career and hope he continues on his positive path as described by Dr. Fraser.*"

42. On July 31, 2023, Catherine wrote a detailed letter to LIU President Kimberly Cline. The letter outlined all facts stated above. Catherine received no response.

43. However, on August 9, 2023, Catherine received an email from Dean Arash Dabestani, the Dean of the Pharmacology Program at the College, requesting permission from

Nickolas to discuss his academic issues with Catherine before scheduling a meeting. Nickolas subsequently signed the necessary documents to grant that permission.

44. On August 21, 2023, Catherine received the first call from Dean Dabestani. Instead of scheduling a meeting, Dabestani simply informed Catherine that "I've spoken to the other deans and the decision was made that we can't take him back."

45. During that call, Dabestani acknowledged having received the letters from Nickolas' physician and clinical psychologist outlining Nicolas' disability and his emotional turmoil surrounding his father's near fatal Covid illness. However, Dabestani avoided acknowledging that he had read the doctors' letters.

46. Also during that call, when confronted with the news that Nickolas had been forced to retake classes he had already passed in the Fall of 2022, Dabestani stated "we don't force anyone to retake classes here" and promised to further "look into it."

47. On August 28, 2023, Dabestani called Catherine back after Catherine contacted the executive assistant of LIU President Cline and complained that she had not heard back from Dabestani for a full week. During this conversation, Dabestani again stated that the College will not take Nickolas back. He did not address the issues he promised to look into during the prior conversation.

48. During that same call, Catherine informed Dabestani that Professor Fernando Gonzales, the head of the Scholastic Committee, was adamantly opposed to requiring Nickolas to repeat the 15.5 credit hours of classes he had already passed as a condition to reinstatement. Dabestani promised to reach out to Professor Gonzales "today" and to call Catherine back, but added, "If you don't hear back from me, I want you to understand it means that we can't take him back."

49. By August 31, 2023, Catherine had not received a return call from Dabestani. She decided to visit President Cline at her office and spoke to the president's executive assistant, Nancy Gessner. Ms. Gessner called Dabestani who informed her and Catherine that "Nick has been given multiple chances and we won't take him back again!"

50. On September 1, 2023, Catherine again called President Cline's office and was informed the president was not in. Shortly thereafter, she received a call from Dabestani who offered a meeting with himself and Dr. Schaefer, the COO of the College, and Catherine on September 5, 2023, which offer Catherine accepted.

51. On September 5th, 2023, Catherine appeared for the scheduled meeting in the company of a friend, Ms. Boutrios, and Plaintiff Nickolas. Points that were discussed at the meeting included

- The College's complete lack of support services or intervention, including no Office of Student Support Services on the Brooklyn Campus.

- No mention by faculty that Student Support Services are even available.

- Dabestani's disregard of the doctor's letters informing the College of Nickolas' disability.

- Disregard for the compounded emotional distress caused during the COVID lockdown, and Nickolas' father's devastating COVID illness, hospitalization, and rehabilitation.

52. The meeting concluded with Dabestani stating, **"***Okay, he can always reapply to the Pharmacy Program, but there's no guarantee that he'll be admitted***."** According to subsequent explanations by Dr. Schaefer, "reapplying" meant that Nickolas would have to start all over **with zero credit for classes already passed.**

**COUNT I
DISCRIMINATION
BASED ON DISABILITY
(42 U.S. Code § 12182 - Prohibition of Discrimination by Public**

**Accommodations)**

53. Subsection (a) of 42 U.S. Code § 12182 provides the following:

(a) General rule

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

54. Subsection (b)(2)(A) provides in relevant part that:

(A) Discrimination

For purposes of subsection (a), discrimination includes—

(i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

55. By requiring Nickolas to re-take seven (7) classes worth a total of 15.5 credit hours in order to be readmitted to the College of Pharmacy, all named Defendants, acting individually or in combination with each other, imposed or applied eligibility criteria that screened or tended to screen out an individual with a disability, to wit, the Plaintiff, Nickolas Melanthiou, from fully and equally enjoying the College's goods, services, facilities, privileges, advantages, or accommodations.

56. By virtue of holding itself out and operating as a postsecondary educational institution, Defendant Long Island University comes within the definition of a "public accommodation" pursuant to 42 U.S.C. § 12181(7)(J).

57. As a public accommodation, Defendant LIU is subject to the antidiscrimination provisions contained within the Americans with Disabilities Act as codified in Chapter 126 of Title 42, United States Code.

58. Plaintiff had been diagnosed with ADHD, general anxiety disorder, and depression. These conditions, alone and in combination, interfere with Plaintiff's ability to learn and thus constitute a disability within the meaning of 42 U.S. Code § 12102(1)(A) because they substantially interfere with a major life activity of his, to wit, his learning ability. *See* 42 U.S. Code § 12102(2)(A). In Plaintiff's case here, the major life activities impacted and substantially limited by his diagnosed condition include "learning, reading, concentrating, thinking, communicating, and working." *Id*.

59. Pursuant to 42 U.S. Code § 12102(4)(A), the term "disability" shall be construed "in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *Id*.

60. The Defendants herein were made aware of Plaintiff's conditions in October 2022 when Catherine presented Dr. Ethel Iusim's letter to Dean Smith and requested a reasonable accommodation.

61. The Defendants were further made aware of Nickolas' disability on August 21, 2023, when Plaintiff's mother provided the letters of Plaintiff's physician and clinical psychologist to Dean Dabestani.

62. By imposing the arbitrary, onerous, and unnecessary condition of having to retake (and pay again for) all classes Plaintiff had already passed onto Plaintiff's re-enrollment at the College, Defendants jointly and severally discriminated against Plaintiff on the basis of his disability by subjecting him "directly, or through contractual, licensing, or other arrangements, to

a denial of the opportunity … to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations" of the College.

**COUNT II**
**DISCRIMINATION,**
**VIOLATING SECTION 504**
**(29 U.S. Code § 701, et seq. - Prohibition of Discrimination by Recipients of Federal Funding)**

63. Plaintiff, Nickolas Melanthiou, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

64. At all times relevant hereto, the College was a "program or activity receiving Federal financial assistance" within the meaning of 29 U.S.C. Section 794(b)(2)(A). The College was therefore subject to Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. Sections 701 *et seq.*)

65. Plaintiff informed the College of his disability and requested a reasonable accommodation by requesting to have the five (5) college classes he had already passed recognized so that he would not be forced to pay for them and take them again.

66. By denying Plaintiff readmission to the College without Plaintiff re-taking already passed classes, Defendant LIU refused the accommodation Plaintiff requested.

67. The accommodation requested would not have imposed a substantial (or even a *minimal*) financial or other burden on the College.

68. At all times relevant hereto, Plaintiff was a qualified individual with a disability as defined in 29 U.S.C. Section 705(20)(B) and further defined in 42 U.S.C. Section 12102(1).

69. By refusing to accommodate Plaintiff after having been notified of Plaintiff's disability, the College discriminated against Plaintiff based solely upon Plaintiff's known disability in violation of 29 U.S.C. Section 794(a).

70. In so doing, the College excluded Plaintiff from the participation in, denied him the benefits of, and subjected Plaintiff to discrimination under, a program or activity receiving Federal financial assistance in violation of that statute.

71. Plaintiff hereby sues for compensatory damages and attorney's fees as provided by 29 U.S. Code § 794a.

## COUNT III
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### As to the Individual Defendants

72. Plaintiff, Nickolas Melanthiou, realleges and incorporates by references all paragraphs contained in the Complaint thus far above, as if fully stated herein.

73. To state a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (*citing Howell v. N.Y. Post Co.,* 81 N.Y.2d 115, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350 (N.Y. 1993)).

74. As previously articulated more fully in the Plaintiff's General Factual Allegations which are incorporated herein by reference, Defendants Arash Dabestani, Phyllis Stone, Jean-Ann Smith, Joseph Bova, and Kimberly Cline's conduct toward Plaintiff was outrageous in that they:

  i. forced Plaintiff to undergo retake and pay all over again for 15.5 credit hours as a condition of reenrollment

  ii. Defendants did this without any regard for the emotional pain this would cause Plaintiff after having spent three years struggling to maintain his academic credentials while suffering from ADHD, depression, and general anxiety;

    iii.  Paid no regard to Nickolas fearing for the life of his father who spent three months in an induced coma during the 2020 pandemic and then having to take care of his father while struggling academically for the stated reasons;

    iv.  Informed Nickolas that he would have to pay for these 15.5 credit hours *yet once more* after having already paid twice if he were readmitted to the College again in the Fall of 2023.

75. These acts by the individual defendants, jointly and severally, deliberately or recklessly, inflicted severe mental and emotional suffering upon the Plaintiff.

76. These acts by the individual defendants were outrageous and beyond the bounds of conduct to be tolerated in civilized society, especially given such conduct was performed by principals of the college Plaintiff attended who had complete power to make or break his academic career.

77. As a direct and proximate result of these acts by the individual defendants, Plaintiff was caused to suffer severe and pervasive emotional distress including, but not limited to, fear, humiliation, shame, and embarrassment.

## ATTORNEY'S FEES AND COSTS

78. As a direct result of the actions of the defendants heretofore mentioned, Plaintiff was forced to retain the undersigned legal counsel and expend attorney's fees and litigation expenses and costs of court. Pursuant to 28 CFR Part 36, Subpart E, § 36.505, Plaintiff hereby requests that the Court order Defendants to pay Plaintiff's attorney's fees and costs of court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Nickolas Melanthiou, demands judgment against Defendants Long Island University doing business as the Arnold and Marie Schwartz College of Pharmacy,

14

Dean Phyllis Stone, Dean Arash Dabestani, Dean Jean-Anne Smith and Dean Kimberly Cline, jointly and severally, and alternatively,

A) Monetary compensatory damages for destroying Plaintiff's career as a pharmacist and for his physical and emotional pain and suffering.

B) Reasonable attorney's fees as set out above.

C) Reinstatement of Plaintiff in his original program at LIU College of Pharmacy.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action of all issues so triable.

Respectfully Submitted,

*/s/ Frank R. Schirripa*
**Hach Rose Schirripa & Cheverie LLP**
Frank R. Schirripa
112 Madison Avenue, 10th Floor
New York, New York 10016
Tel: (212) 213-8311
Email: fschirripa@hrsclaw.com


Kyle Anthony Adams (pro hac vice forthcoming)
**Lento law Group, PC**
1814 E. Route # 70 – suite 321
Cherry Hill, NJ 08003
Tel: (856) 652-2000
Fax: (856) 375-1010
Email: Kaadams@lentolawgroup.com